# EXHIBIT A



LANE POWELL

DAVID C. SPELLMAN
206.223.7392
spellmand@lanepowell.com

October 9, 2018

**VIA ELECTRONIC MAIL & U.S. MAIL**

John H. O'Rourke
Daniel M. O'Rourke
The Law Office of John H. O'Rourke PLLC
2101 Fourth Avenue, Suite 2200
Seattle, WA 98121-2352

Re:   Bentley v. Wells Fargo Bank, N.A.
       Scheduling Meet and Confer Conference

Dear John:

We request a meet and confer conference under Local Civil Rule (LCR) 37 on Monday, October 15, 2018 at 1 p.m. Bentley has failed to respond properly to discovery. That discovery includes but is not limited to the discovery listed below.

Interrogatory No. 4 requested information about expert witnesses. Bentley failed to disclose: (b) the documents relied upon by the expert, (c) the expert's opinions, (d) communications about the expert opinions, (e) the expert's hourly rate, (f) proceedings/cases where the expert testified, and (g) the expert's client in the proceeding/cases. RFP No. 1 required an expert report. Separately, Federal Civil Rule (Civil Rule) 26(a)(2)(A)-(B) required an expert report and set for the mandatory elements. But none was attached to the response to the RFP.

If Wells Fargo had not sent the written discovery, then Civil Rule 26(a)(2)(B) required the report to be provided on September 17, 2018. But Wells Fargo's written discovery required the reports last spring. Civil Rule 26(e) required Bentley to timely supplement all disclosures and responses. But Bentley failed to comply with that requirement. Bentley has not disclosed a medical expert to support his emotional distress claim, a damages expert, and a liability expert. A reasonable remedy is either to exclude all expert testimony or to postpone the trial date to permit Bentley to retain such experts. The Civil Rules do permit fact witnesses to offer opinion testimony but Bentley has not disclosed opinions under Civil Rule 26(a)(2)(C).

STREET ADDRESS: 1420 FIFTH AVENUE, SUITE 4200  I  SEATTLE, WA 98101-2375   P 206.223.7000  F 206.223.7107  LANEPOWELL.COM
MAILING ADDRESS: P.O. BOX 91302  I  SEATTLE, WA 98111-9402
A PROFESSIONAL CORPORATION

John H. O'Rourke
October 9, 2018
Page 2

Interrogatory No. 5 requested damages be stated with particularity including "monetary, emotional, consequential damages" and the alleged causes. But Bentley failed to identify the damages except to generically state there were denials of credit needed for business operations and damage to his personal credit score including his refinancing of existing mortgages. That was insufficient to categorize damages by causes of action.

Separately, Civil Rule 26(a)(iii) required Bentley to provide a computation of each category of damages including materials bearing on the nature and extent. But Bentley failed to comply with that requirement and to supplement information. A reasonable remedy is either to exclude all evidence on financial damages and emotional distress damages or to postpone the trial date to permit Bentley to provide such information.

In the event that Bentley had made the mandatory disclosures and retained a damages expert, then that expert would have reviewed financial records for Bentley's company, his efforts to mitigate damages, and communications about refinancing and paying off other mortgages after Wells Fargo reconveyed the deed of trust.

Please find enclosed deposition notices and document and testimony subpoenas for Steve Hawley and for Advance Physical Therapy & Rehabilitation, Inc., 15623 1st Ave., S., Suite C, Burien, WA 98148 for its financial and planning records in care of your client.

Very truly yours,

LANE POWELL PC

David C. Spellman

:dcs
cc: Rudy Englund
Enclosures

105727.1823/7446913.1

THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   BRADFORD L. BENTLEY,                )
                                        )   No. CV-17-00533-JCC
10                       Plaintiff,     )
                                        )   **NOTICE OF DEPOSITION OF**
11       v.                             )   **BRADFORD BENTLEY**
                                        )
12   WELLS FARGO BANK, N.A.,            )
                                        )
13                       Defendant.     )
                                        )
14  _____   )

15  TO:        Bradford L. Bentley, Plaintiff;

16  AND TO:    John H. O'Rourke, Plaintiff's attorney of record.

17         YOU AND EACH OF YOU will please take notice that the testimony of Plaintiff

18  Bradford L. Bentley will be taken upon oral examination at the instance and request of Defendant

19  Wells Fargo, N.A., in the above-entitled matter at the place and on the date and time specified:

20      Date:        Tuesday, October 16, 2018 or such other date and time mutually agreed

21  upon by counsel.

22      Time:        9:30 a.m.

23      Place:       Lane Powell PC
                     1420 Fifth Avenue, Suite 4200
24                   Seattle, WA 98101-2338

25      Court  Reporter:   Esquire Deposition Solutions, LLC
                           Telephone: 206-624-9099
26                         seattlescheduling@esquiresolutions.com

27

NOTICE OF DEPOSITION OF BRADFORD BENTLEY
NO.  CV-17-00533-JCC - 1

9

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7443979.1

<u>**CERTIFICATE OF SERVICE**</u>

1

2    I hereby declare under penalty of perjury under the laws of the state of Washington and

3  the United States that on October 9, 2018, I caused a true and correct copy of the foregoing to be

4  served on the following person(s) at the address and in the manner indicated below:

5

6  John H. O'Rourke
   Daniel M. O'Rourke
   Law Office of John H. O'Rourke
7  2101 Fourth Ave., Ste. 2200
   Seattle, WA 98121
8  johnhorourke@comcast.net
   dan@seattle-real-estate-lawyer.com
9

10   ☐   **by CM/ECF**
     ☑   **by Electronic Mail**
11   ☐   **by Facsimile Transmission**
     ☑   **by First Class Mail**
12   ☐   **by Hand Delivery**
     ☐   **by Overnight Delivery**
13

14

15                                    _Deborah Strayer_
16   Deborah Strayer

17

18

19

20

21

22

23

24

25

26

27

NOTICE OF DEPOSITION OF BRADFORD BENTLEY
NO. CV-17-00533-JCC - 3

10

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7443979.1

DATED: October 9, 2018

LANE POWELL PC

By _____

David C. Spellman, WSBA No. 15884
Rudy A. Englund, WSBA No. 04123
Rachel B. Greenlee, WSBA No. 49873

Attorneys for Wells Fargo Bank, N.A.

NOTICE OF DEPOSITION OF BRADFORD BENTLEY
NO. CV-17-00533-JCC - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1823/7443979.1

THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                           AT SEATTLE

9    BRADFORD L. BENTLEY,                )
                                          )    No. CV-17-00533-JCC
10                        Plaintiff,      )
                                          )    DEFENDANT'S FIRST SET OF
11         v.                             )    INTERROGATORIES AND
                                          )    REQUESTS FOR PRODUCTION TO
12   WELLS FARGO BANK, N.A.,              )    PLAINTIFF
                                          )
13                        Defendant.      )
                                          )
14   ─────────────────────────────────── )

15   TO:        Bradford Bentley

16   AND TO:    Law Offices of John H. O'Rourke, John H. O'Rourke, Plaintiff's attorneys of

17              record

18         In accordance with the provisions of Fed. R. Civ. P. 33, 34 and local court rules,

19   Defendant Wells Fargo Bank, N.A., ("Wells Fargo" or "Defendant") hereby requests that you

20   respond to the following interrogatories, requests for production, and requests for admission

21   (collectively referred to as "requests"), separately and completely, under oath, and in

22   accordance with the definitions and instructions set forth below.

23         ///

24         ///

25         ///

26         ///

DEFENDANT'S FIRST SET OF INTERROGATORIES AND          LANE POWELL PC
REQUESTS FOR PRODUCTION TO PLAINTIFF - 1         1420 FIFTH AVENUE, SUITE 4200
No. CV-17-00533-JCC                                   P.O. BOX 91302
                                                  SEATTLE, WA 98111-9402
                                            206.223.7000  FAX: 206.223.7107

12

105727.1823/7179319.1

## INSTRUCTIONS

1.      The responses to these requests must be signed, under oath, by the person making them, and objections must be signed by the attorney making them. A copy of the responses and any objections must be served upon the undersigned counsel for Wells Fargo within thirty (30) days after the date of service of these requests upon you.

2.      Each answer shall specifically admit or deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter after the required reasonable inquiry has been conducted. Any objection to a request must set forth the specific ground for objection.

3.      If you fail to respond to these requests within the time allowed, every matter set forth in these requests may be deemed admitted and conclusively established against you for the purpose of this action.

4.      Please note: under Rule 37(c)(2), a party has recourse against another party who fails to admit the truth of a matter in response to a request for admission under Rule 36. If the party requesting the admission thereafter ultimately proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order directing the errant party to pay the moving party's reasonable expenses incurred in making that proof, including attorney's fees.

5.      These requests are continuing in nature, and any additional responsive information discovered subsequent to the scheduled date of response herein should promptly be submitted to Wells Fargo.

## DEFINITIONS

1.      The words "You" and "Yours" refer to Plaintiff Bradford Bentley as well as his agents, attorneys, consultants, accountants, experts, private investigators, and all other representatives in their capacities as such.

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 2
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

13

2.    "Defendant" refers to Wells Fargo, N.A., and any of its attorneys, agents, representatives, parent companies, subsidiaries and affiliates, related companies, contractors, officers, directors, shareholders and employees.

3.    "Document" shall be construed in its broadest sense, and includes any written, printed, typed, photostatic, photographed, recorded, electronically stored version, or other graphic material of any kind or nature, and all mechanical, electronic, or sound recordings in your possession, custody, or control, or known by you to exist.  "Document" includes, but is not limited to, correspondence, memoranda, files, records, interoffice communications, computer or electronically stored data or information, electronic mail, voice mail, notes, diaries, journals, contract documents, advertisements, publications, books, pamphlets, periodicals, catalogs, calculations, estimates, vouchers, statements, invoices, purchase orders, summaries, logs, schedules, ledgers, handwritten or typed notes, microfilm, microfiche, data, drawings, illustrations, working papers, minutes of meetings, reports, studies, computer disks, tape or other recordings, photographs, negatives, slides, dictation belts, voice tapes, telegrams, notes of telephone conversations, and notes of any oral communications. "Document" includes all associated file, binder, or folder tabs, all correspondence transmitting such documents or explaining or commenting on its contents, and all originals, reproductions, drafts, and non-identical copies made by whatever means.

4.    "Communication" and/or "communications" shall refer to every manner or means of disclosure, transfer, or exchange of information, whether orally or by document, or whether face-to-face, by telephone, email, text message, cell phone application communication, mail, personal delivery, or otherwise.

5.    "Or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any information which might otherwise be construed to be outside their scope.

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 3
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7179319.1

1    6.    "Person" means all entities, including any individual, firm, partnership,

2    corporation, association, government agency or government-controlled entity, or any other

3    business entity.  All references to persons or entities also include all persons and/or entities

4    acting on their behalf.

5    7.    "Refer or relate to," and all variants thereof, is used in these requests in its

6    broadest sense.  Documents that "refer or relate to" a subject matter include all documents

7    relevant in any way to the subject matter, indicating or constituting the subject matter, arising

8    out of the subject matter, used in connection with the subject matter, describing the subject

9    matter, depicting the subject matter, recording the subject matter, duplicating the subject

10   matter, or associated with the subject matter.

11   8.    "First Amended Complaint" shall refer to the Amended Complaint for Fraud,

12   Violations of the Consumer Protection Act, Breach of Covenant of Good Faith and Fair

13   Dealing, Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, Intentional Infliction

14   of Emotional Distress, filed on March 15, 2017 in this matter.

15

16                              **INTERROGATORIES**

17   **INTERROGATORY NO. 1:** Please identify each person who answers these

18   interrogatories and each person who assisted, even briefly, on the content of any answer to

19   these interrogatories.

20   **ANSWER:**

21   Bradford Lee Bentley

22   **INTERROGATORY NO. 2:** For each person identified above please state whether

23   they have personal information regarding the loan transaction which is the subject of this

24   lawsuit.

25   **ANSWER:**

26   **Yes**

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 4
No. CV-17-00533-JCC

LANE POWELL pc
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

15

105727.1823/7179319.1

**INTERROGATORY NO. 3:**  Identify the name, address, and telephone number of each and every witness with discoverable information concerning any and all claims alleged in your First Amended Complaint.

**ANSWER:**

Anthony Ho, U.S. Bank Factoria Branch, 4040 SE Factoria Blvd., Bellevue, WA 98006; 425-601-6004

Travis Brown, Umpqua Bank Queen Anne Branch, 1630 Queen Anne Ave. N., Seattle, WA 98109; (206) 749-7470

Angela Whitney, Wells Fargo

Almodova Anaya "Ms. Anaya", Wells Fargo

Summer Mucha "Ms. Mucha", Wells Fargo

Emily Hill, Wells Fargo

Lisa Whitee Potter

Amy Arasmith, Wells Fargo

Eric Hilsabeck, Wells Fargo

**INTERROGATORY NO. 4:** Identify each expert witness you intend to call to testify at trial.  For each such witness, identify the following information:

a)  The witness's name;

b)  All documents relied upon by the witness in creating his or her opinions;

c)  An explanation of the basis of each of the witness's opinions;

d)  Any person with whom the witness spoke regarding his or her opinions;

e)  The hourly rate charged by the witness for work on this matter;

f)  A list of all legal proceedings in which the witness has testified as an expert, whether in a deposition, trial, or arbitration, including the name of such proceeding

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 5
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7179319.1

16

1  and the court or arbitration in which such proceeding occurred; and

2  g)    The name of counsel for the witness's client in each of the cases identified in

3  section f above.

4  **ANSWER:**

5

6  Steve Howley, steve@mortgagespecialists.com

7  Reviewed Brad Bentley's Wells Fargo bank file with Mr. Bentley

8  Answer will be supplemented regarding expert's court appearances

9

10

11

12

13  **INTERROGATORY NO. 5:**  State with particularity what you contend are your

14  damages.  Include any, and all, monetary, emotional, consequential, etc. damages you intend

15  to plead and recover and the alleged cause(s) of these damages.

16  **ANSWER:**

17

18  False or innacurate reporting to credit agencies by defendant resulted in denials of

19  credit needed for business operations and damage to personal credit score that otherwise

20  impacted Brad Bentley, including his refinancing of existing mortgages.

21  **REQUESTS FOR PRODUCTION**

22  **REQUEST FOR PRODUCTION NO. 1:** Please produce all reports created by any

23  expert witness identified in response to Interrogatory No. 4 in relation to this matter.

24  **RESPONSE:**

25  **Attached**

26

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 6
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

17

105727.1823/7179319.1

**REQUEST FOR PRODUCTION NO. 2:**  Please produce any and all statements made by any witness identified in response to Interrogatory No. 3 in your possession or control.

**RESPONSE:**

**Attached**

**REQUEST FOR PRODUCTION NO. 3:**  Please produce any and all documents, including but not limited to communications, in your possession or control that relate or refer to any of your claims against Wells Fargo in the First Amended Complaint.

**RESPONSE:**

**Attached**

**REQUEST FOR PRODUCTION NO. 4:**  Produce any and all records or documents relating in any way to your non-privileged communications with Wells Fargo or others regarding the allegations in paragraphs 2.3-2.5 of the First Amended Complaint relating to your alleged attempts to negotiate a loan modification.

**RESPONSE:**

**Attached**

**REQUEST FOR PRODUCTION NO. 5:**  Produce any pre-suit notice that you provided to Wells Fargo or anyone about your claim.

**RESPONSE:**

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 7
No. CV-17-00533-JCC

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7179319.1

1   **Attached**

2

3   **REQUEST FOR PRODUCTION NO. 6:** Please produce any and all documents,

4   including but not limited to communications, in your possession or control that evidencing

5   the allegedly "derogatory information" transmitted to credit reporting agencies, as referenced

6   in paragraph 2.4 of the First Amended Complaint

7   **RESPONSE:**

8   **Attached**

9

10

11

12   Dated: January 11, 2018

13                                        LANE POWELL PC

14

15                          By: *s/ David C. Spellman*
                                 Rudy A. Englund, WSBA No. 04123
16                               David C. Spellman, WSBA No. 15884
                                 Rachel B. Greenlee, WSBA No. 49873
17                               Attorneys for Defendant Wells Fargo, N.A.

18

19

20

21

22

23

24

25

26

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 8
No. CV-17-00533-JCC

19

105727.1823/7179319.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY'S CERTIFICATE

The undersigned attorney for Plaintiff Bradford Bentley has read the foregoing responses to Interrogatories and Requests for Production and they are in compliance with CR 26(g).

_____

Attorney for Plaintiff Bradford Bentley

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 9
No. CV-17-00533-JCC

20

105727.1823/7179319.1

<u>PARTY CERTIFICATION</u>

STATE OF WASHINGTON )
                      ) ss
COUNTY OF   King      )

_Bradford Lee Bentley_ being first duly sworn on oath, deposes and says:

I am plaintiff Bradford Bentley and have read the foregoing answers and responses thereto, know the contents thereof, and believe the same to be true.

_Bradford Lee Bentley_

Subscribed and sworn to before me on ___May 12TH___, 2018.

_Roxanne Ray_

ROXANNE RAY
NOTARY PUBLIC
STATE OF WASHINGTON
My Commission Expires September 8, 2021

Print Name: __Roxanne Ray__
NOTARY PUBLIC for the State of
Washington, residing at
__Seattle, WA__

My appointment expires: __9/8/2021__

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 10
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7179319.1

1

## CERTIFICATE OF SERVICE

2

I certify, under penalty of perjury under the laws of the State of Washington, that on

3

the date indicated below, I caused the foregoing document to be served on the following

4

people via electronic mail and U.S. Mail, postage prepaid at the following address:

5

6  John H. O'Rourke
   Daniel M. O'Rourke

7  Law Office of John H. O'Rourke
   2101 Fourth Ave., Ste. 2200

8  Seattle, WA 98121
   dan@seattle-real-estate-lawyer.com

9  john@seattle-real-estate-lawyer.com

10

11  Executed on the 11th day of January, 2018, at Seattle, Washington.

12
                                    _s/Deborah Strayer_
13                                  Deborah Strayer

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION TO PLAINTIFF - 11
No. CV-17-00533-JCC

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

22

105727.1823/7179319.1



PS00000000013

EP
OD



PRESS FI⟶

HDPE TYVEK® IS RECYCLABLE.
©2003,

 **P**

US POSTAGE AND FEES PAID
PRIORITY MAIL
May 30 2018
Mailed from ZIP 98121
3 lb PM Local

CID: 317143
CommercialPlusPrice



endicia.com

071801059801

## PRIORITY MAIL 1 – DAY

TSAI LAW COMPANY
2101 4TH AVE STE 2200
SEATTLE WA 98121

**0005**

Shipped using PostalMate®
Pkg:33012

SHIP TO:

LANE POWELL PC
DAVID C. SPELLMAN
1450 5TH AVE STE 4200
SEATTLE WA 98101 – 2314

### USPS TRACKING #



9405 5102 0082 8753 1145 24

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



UNITED ST
POSTAL SE

23

LAW OFFICE OF
# JOHN H. O'ROURKE
2101 FOURTH AVENUE
SUITE 1560
SEATTLE, WASHINGTON 98121

John H. O'Rourke

Daniel M. O'Rourke

(206) 824-2802

May 25, 2018

RECEIVED
MAY 31 2018
USDS
LANE POWELL PC
TIME 9:50 ATTY D. Spellman

David C. Spellman
Lane Powell PC
1450 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111

Re:   **Bentley v. Wells Fargo Bank**
      **U.S. District Ct. Cause No. CV-17-00533-JCC**

Dear Mr. Spellman:

Enclosed please find defendant's answers to interrogatories and requests for production. I propose Judge Armstrong, Judge Learned, Judge McDermott, or Judge McPhee for mediation. Please let me know what date(s) your propose. Finally, plaintiff's responses to requests for production were incomplete and I noticed your objection to the request for production of Mr. Bentley's bank file as overly broad. I typically get a CD with the complete file and am not sure why this file is any different. Please produce the file or clarify the bank's position with respect to my client's loan file.

Very truly yours,

John H. O'Rourke

cc:   Client

24

25

26

27

THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  BRADFORD L. BENTLEY,                    )
                                          )   No. CV-17-00533-JCC
10                      Plaintiff,        )
                                          )   NOTICE OF DEPOSITION OF
11      v.                                )   STEVE HAWLEY
                                          )
12  WELLS FARGO BANK, N.A.,               )
                                          )
13                      Defendant.        )
                                          )

14  ————————————————————————————————

TO:       Steve Hawley
15            c/o Mortgage Specialists;
              14220 Interurban Ave S #140
16            Tukwila, WA  98168-3340

17  AND TO:   Plaintiff and John H. O'Rourke, Plaintiff's attorney of record.

18          YOU AND EACH OF YOU will please take notice that the testimony of Steve Hawley

19  of Mortgage Specialists will be taken upon oral examination at the instance and request of

20  Defendant Wells Fargo, N.A., in the above-entitled matter at the place and on the date and time

21  specified:

22          Date:       Wednesday, October 24, 2018 or such other date and time mutually agreed

23  upon by counsel.

24          Time:       1:00 p.m.

25          Place:      Lane Powell PC
                        1420 Fifth Avenue, Suite 4200
26                      Seattle, WA 98101-2338

27

NOTICE OF DEPOSITION OF STEVE HAWLEY
28  NO.  CV-17-00533-JCC - 1

105727.1823/7446826.1

1    Court   Reporter:      Esquire Deposition Solutions, LLC
                            Telephone: 206-624-9099
2                           seattlescheduling@esquiresolutions.com

3

4    DATED:  October 9, 2018

5
                                    LANE POWELL PC
6

7
                                    By
8                                      David C. Spellman, WSBA No. 15884
                                       Rudy A. Englund, WSBA No. 04123
9                                      Rachel B. Greenlee, WSBA No. 49873

10                                  Attorneys for Wells Fargo Bank, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

29   NOTICE OF DEPOSITION OF STEVE HAWLEY
     NO.  CV-17-00533-JCC - 2                              LANE POWELL PC
                                                        1420 FIFTH AVENUE, SUITE 4200
                                                              P.O. BOX 91302
                                                          SEATTLE, WA 98111-9402
                                                      206.223.7000  FAX: 206.223.7107
     105727.1823/7446826.1

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Washington

| | |
|---|---|
| BRADFORD L. BENTLEY | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   CV-17-00533-JCC |
| WELLS FARGO BANK, N.A. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      STEVE HAWLEY, c/o Mortgage Specialists, 14220 Interurban Ave S #140, Tukwila WA 98168

*(Name of person to whom this subpoena is directed)*

✔ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Lane Powell PC<br>1420 Fifth Ave., Ste. 4200<br>Seattle WA 98101 | Date and Time:<br>10/24/2018 1:00 pm |
|---|---|

The deposition will be recorded by this method: _____

✔ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: (1) all communications with Bradford Bentley, (2) all communications about Bradford Bentley, (3) all commuications about Advance Physical Therapy and Sports Rehabilitation, (4) any expert reports or opinions, (5) all transactions with Bentley or Advance Phyiscal Therapy.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/9/18

CLERK OF COURT

_____          OR          _____
Signature of Clerk or Deputy Clerk                                        Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Wells Fargo Bank
_____ , who issues or requests this subpoena, are:

David Spellman, Lane Powell, 1420 Fifth Ave. Ste 4200, Seattle WA 98101, spellmand@lanepowell.com, 206-223-7000

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

30

1        THE HONORABLE JOHN C. COUGHENOUR

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9    BRADFORD L. BENTLEY,                )    No. CV-17-00533-JCC
                                         )
10                          Plaintiff,   )    **NOTICE OF 30(B)(6) DEPOSITION**
                                         )    **OF CUSTODIAN OF ADVANCE**
11         v.                            )    **PHYSICAL THERAPY &**
                                         )    **REHABILITATION, INC.**
12   WELLS FARGO BANK, N.A.,             )
                                         )
13                          Defendant.   )
     _____)
14

15   TO:       Civil Rule 30(b)(6) Designee of
               Advance Physical Therapy & Rehabilitation, Inc.
16             15623 1st Ave., So. Ste.C
               Burien, WA 98148
17
     AND TO:   Plaintiff and John H. O'Rourke, Plaintiff's attorney of record.
18
              YOU AND EACH OF YOU will please take notice that pursuant to Civil Rule 30(b)(6),
19
     the testimony of Records Custodian for Advance Physical Therapy & Rehabilitation, Inc. will be
20
     taken upon oral examination at the instance and request of Defendant Wells Fargo, N.A., in the
21
     above-entitled matter at the place and on the date and time specified:
22
              Date:       Tuesday, October 25, 2018 or such other date and time mutually agreed
23
     upon by counsel.
24
              Time:       1:00 p.m.
25
              Place:      Lane Powell PC
26                        1420 Fifth Avenue, Suite 4200
                          Seattle, WA 98101-2338
27

NOTICE OF DEPOSITION OF ADVANCE PHYSICAL
THERAPY & REHABILITATION INC.
NO.  CV-17-00533-JCC - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

105727.1823/7446928.1

1

Court  Reporter:        Esquire Deposition Solutions, LLC
                        Telephone: 206-624-9099
2                       seattlescheduling@esquiresolutions.com

3

4       DATED:  October 9, 2018

5                                   LANE POWELL PC

6

7                       By
                                David C. Spellman, WSBA No. 15884
8                               Rudy A. Englund, WSBA No. 04123
                                Rachel B. Greenlee, WSBA No. 49873
9
                        Attorneys for Wells Fargo Bank, N.A.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

32

NOTICE OF DEPOSITION OF ADVANCE PHYSICAL
THERAPY & REHABILITATION INC.
NO.  CV-17-00533-JCC - 2

105727.1823/7446928.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| BRADFORD L. BENTLEY | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   CV-17-00533-JCC |
| WELLS FARGO BANK, N.A. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Advance Physical Therapy & Rehabilitation, Inc., Records Custodian

*(Name of person to whom this subpoena is directed)*

✔ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: Topics: (1) records responsive to the document subpoena and the company's efforts to locate and produce those records, (2) financial, budget and planning by the company for the period from January 1, 2015 until the present, (3) communications about the company's credit-rating, (4) communications about mortgages, lines of credit, and loan paid by the company or its owners, (5) any applications for secured or unsecured lines of credit or loans to the company or its owners, and (6) any other relevant topics.

The deposition will be recorded by this method: _____

| Place: Lane Powell PC<br>1420 Fifth Ave., Ste. 4200<br>Seattle WA 98101 | Date and Time:<br>10/25/2018 1:00 pm |
|---|---|

✔ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Documents: (1) financial, budget and planning records for the company for the period from January 1, 2015 until the present, (2) emails and communications about financing, budgeting and planning for the company for the period from January 1, 2015 until the present, (3) records, emails, and communications about the company's credit-rating, (4) records, emails, and communications about mortgages, lines of credit, and loan paid by the company or its owners, (5) any applications for secured or unsecured lines of credit or loans to the company or its owners

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: *10/9/18*

CLERK OF COURT              OR                                 

        *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Wells Fargo Bank
., who issues or requests this subpoena, are:

David Spellman, Lane Powell, 1420 Fifth Ave, Ste 4200, Seattle WA 98101, spellmand@lanepowell.com, 206-223-7000

33

**Notice to the person who issues or requests this subpoena:** If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| BRADFORD L. BENTLEY | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   CV-17-00533-JCC |
| WELLS FARGO BANK, N.A. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Advance Physical Therapy & Rehabilitation, Inc. 15623 1st Ave So., Ste C, Burien WA 98148

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: (1) financial, budget and planning records for the company for the period from January 1, 2015 until the present, (2) emails and communications about financing, budgeting and planning for the company for the period from January 1, 2015 until the present, (3) records, emails, and communications about the company's credit-rating, (4) records, emails, and communications about mortgages, lines of credit, and loan paid by the company or its owners, (4) any applications for secured or unsecured lines of credit or loans to the company or its owners.

| Place: Lane Powell PC<br>    1420 Fifth Ave., Ste 4200<br>    Seattle WA 98101 | Date and Time:<br><br>    10/25/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/9/18

| CLERK OF COURT | |
|---|---|
| _____ | OR    _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Wells Fargo Bank
_____, who issues or requests this subpoena, are:

David Spellman, Lane Powell, 1420 Fifth Ave, Ste 4200, Seattle WA 98101, spellmand@lanepowell.com, 206-223-7000

**34**        **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT    B

**Strayer, Deborah**

| | |
|---|---|
| **From:** | Michelle Nemeth <mnemeth@jamsadr.com> |
| **Sent:** | Monday, December 3, 2018 3:40 PM |
| **To:** | Spellman, David; Englund, Rudy; johnhorourke@comcast.net; dan@seattle-real-estate-lawyer.com |
| **Cc:** | Strayer, Deborah |
| **Subject:** | Bentley, Bradford vs. Wells Fargo Bank, N.A. - JAMS Ref No. 1160022451 |

Good afternoon,

I'm checking to see if you are ready to look at potential dates for the second mediation session.  Please let me know.

Thank you, Michelle



**Michelle Nemeth**
Business Manager

*JAMS - Local Solutions. Global Reach.*™
1420 Fifth Ave. | #1650 | Seattle, WA  98101
P: 206-292-0441 | F: 206-292-9082
**www.jamsadr.com**

Follow us on **LinkedIn** and **Twitter**.

36

# EXHIBIT    C

**From:** John ORourke <johnhorourke@comcast.net>
**Sent:** Thursday, January 24, 2019 9:39 AM
**To:** Spellman, David <SpellmanD@LanePowell.com>
**Cc:** Strayer, Deborah <StrayerD@LanePowell.com>; Englund, Rudy <EnglundR@LanePowell.com>; Brown, Jane E. <BrownJE@LanePowell.com>; Michelle Nemeth <mnemeth@jamsadr.com>
**Subject:** RE: Bentley v. Wells Fargo

Hi Dave:

Doug Minor is now finalizing the report, and I should have it to you tomorrow.

John

> On December 13, 2018 at 8:45 AM "Spellman, David" <SpellmanD@LanePowell.com> wrote:
>
> John,
>
> Please respond to the email below or provide us with a deadline when you will respond to the email below.
>
> Thank you.
>
> LANE POWELL
> **DAVID SPELLMAN**
> **Shareholder**  Bio | vCard
> spellmand@lanepowell.com
> **D** 206.223.7392  **C** 206.696.0718
> **LANEPOWELL.COM**
>
> **From:** Spellman, David
> **Sent:** Tuesday, December 11, 2018 3:34 PM
> **To:** 'johnhorourke' <johnhorourke@comcast.net>
> **Cc:** Strayer, Deborah <StrayerD@LanePowell.com>; Englund, Rudy (EnglundR@LanePowell.com) <EnglundR@LanePowell.com>; Brown, Jane E. <BrownJE@LanePowell.com>; 'Michelle Nemeth' <mnemeth@jamsadr.com>
> **Subject:** Bentley v. Wells Fargo
>
> John,

38  This email follows up the voicemail message that you left for me.

1

On November 9, 2018, I filed a declaration supporting the stipulated motion regarding ADR and for a trial continuance.  The declaration confirmed Bentley had committed to provide an expert report by November 21, 2018 and to resume the mediation with Judge McDermott in early December.  Dkt. 17 at 2-3.  The declaration also confirmed Wells Fargo would provide expert reports 13 days after Bentley provided his report and confirmed Bentley would make his expert available to be deposed 10 days after provided in his report.  Dkt. 17 at 4.

On November 13, 2018, the court granted stipulated motion. On December 3, JAMS sent an email asking about the status of the mediation. I did not receive any communications from you between November 9 and yesterday, December 10.

Yesterday, I left you a voicemail message regarding the status of the case.  Today, you responded that Bentley will be providing his expert report shortly before Christmas.

In response to Bentley's proposal, Wells Fargo reserves its right to seek relief from the court for Bentley's failure to comply with the case schedule, the civil rules, and the commitments he made in conjunction with the stipulated motion.

Subject to the reservation stated above, Wells Fargo makes the following proposal:  In the event that Bentley does provide his report shortly before Christmas, then the parties agree that the discovery schedule should be equitably adjusted to take into account the holidays and possible attendance at the Rose Bowl, etc.  Therefore, Bentley will make his expert available to be deposed the week of January 7 and Wells Fargo's reports are due January 16, and the parties will mediate in early February or sooner if possible.

Please confirm if Bentley accepts Wells Fargo's proposal for adjusting the discovery schedule.

LANE POWELL
**DAVID SPELLMAN**
**Shareholder** Bio | vCard
spellmand@lanepowell.com
**D** 206.223.7392  **C** 206.696.0718
**LANEPOWELL.COM**

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

39

# EXHIBIT    D

**Strayer, Deborah**

| | |
|---|---|
| **From:** | Brown, Jane E. |
| **Sent:** | Friday, January 25, 2019 1:49 PM |
| **To:** | david@thespellmanco.com; Strayer, Deborah |
| **Subject:** | Fwd: Bentley v. Wells Fargo |
| **Attachments:** | Bentley report 1-24-19.pdf; ATT00001.htm |

Sent from my iPhone. Please excuse typos and the brevity of the message.

Begin forwarded message:

> **From:** John ORourke <johnhorourke@comcast.net>
> **Date:** January 25, 2019 at 1:27:32 PM PST
> **To:** "Brown, Jane E." <BrownJE@LanePowell.com>
> **Subject: RE: Bentley v. Wells Fargo**
> **Reply-To:** John ORourke <johnhorourke@comcast.net>
>
> Ms. Brown:
>
> In supplement to Plaintiff's Answer's to Wells' First Interrogatories and Requests for Production, enclosed please find report of Plaintifff's expert, Doug Minor.
>
> Mr. Minor is available for deposition in the month of February, as is Mr. Bentley. We are also ready for a second round of mediation, prior to depositions. Thanks.
>
> John H. O'Rourke
>
> > On January 24, 2019 at 12:22 PM "Brown, Jane E." <BrownJE@LanePowell.com> wrote:
> >
> > Thank you.
> >
> > We look forward to receiving it.
> >
> > Best,

41

1

Jane

LANE POWELL

**JANE E. BROWN, CIPP/US**
**Counsel to the Firm**  Bio | vCard
brownje@lanepowell.com
**D** 206.223.7126  **C** 206.724.6763
**LANEPOWELL.COM**

**From:** John ORourke <johnhorourke@comcast.net>
**Sent:** Thursday, January 24, 2019 9:39 AM
**To:** Spellman, David <SpellmanD@LanePowell.com>
**Cc:** Strayer, Deborah <StrayerD@LanePowell.com>; Englund, Rudy <EnglundR@LanePowell.com>; Brown, Jane E. <BrownJE@LanePowell.com>; Michelle Nemeth <mnemeth@jamsadr.com>
**Subject:** RE: Bentley v. Wells Fargo

Hi Dave:

Doug Minor is now finalizing the report, and I should have it to you tomorrow.

John

> On December 13, 2018 at 8:45 AM "Spellman, David" <SpellmanD@LanePowell.com> wrote:
>
> John,
>
>
> Please respond to the email below or provide us with a deadline when you will respond to the email below.
>
>
> Thank you.

42

**LANE POWELL**
**DAVID SPELLMAN**
**Shareholder** <u>Bio</u> | <u>vCard</u>
spellmand@lanepowell.com
**D** 206.223.7392  **C** 206.696.0718
**LANEPOWELL.COM**

**From:** Spellman, David
**Sent:** Tuesday, December 11, 2018 3:34 PM
**To:** 'johnhorourke' <<u>johnhorourke@comcast.net</u>>
**Cc:** Strayer, Deborah <<u>StrayerD@LanePowell.com</u>>; Englund,
Rudy (<u>EnglundR@LanePowell.com</u>)
<<u>EnglundR@LanePowell.com</u>>; Brown, Jane E.
<<u>BrownJE@LanePowell.com</u>>; 'Michelle Nemeth'
<<u>mnemeth@jamsadr.com</u>>
**Subject:** Bentley v. Wells Fargo

John,

This email follows up the voicemail message that you left for me.

On November 9, 2018, I filed a declaration supporting the
stipulated motion regarding ADR and for a trial continuance. The
declaration confirmed Bentley had committed to provide an expert
report by November 21, 2018 and to resume the mediation with
Judge McDermott in early December. Dkt. 17 at 2-3. The
declaration also confirmed Wells Fargo would provide expert
reports 13 days after Bentley provided his report and confirmed
Bentley would make his expert available to be deposed 10 days
after provided in his report. Dkt. 17 at 4.

On November 13, 2018, the court granted stipulated motion. On
December 3, JAMS sent an email asking about the status of the
mediation. I did not receive any communications from you
between November 9 and yesterday, December 10.

43

Yesterday, I left you a voicemail message regarding the status of the case. Today, you responded that Bentley will be providing his expert report shortly before Christmas.

In response to Bentley's proposal, Wells Fargo reserves its right to seek relief from the court for Bentley's failure to comply with the case schedule, the civil rules, and the commitments he made in conjunction with the stipulated motion.

Subject to the reservation stated above, Wells Fargo makes the following proposal: In the event that Bentley does provide his report shortly before Christmas, then the parties agree that the discovery schedule should be equitably adjusted to take into account the holidays and possible attendance at the Rose Bowl, etc. Therefore, Bentley will make his expert available to be deposed the week of January 7 and Wells Fargo's reports are due January 16, and the parties will mediate in early February or sooner if possible.

Please confirm if Bentley accepts Wells Fargo's proposal for adjusting the discovery schedule.

LANE POWELL
**DAVID SPELLMAN**
**Shareholder** Bio | vCard
spellmand@lanepowell.com
**D** 206.223.7392 **C** 206.696.0718
**LANEPOWELL.COM**

This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify me immediately, and please do not copy or send this message to anyone else.

44

# Bradford Bentley Credit Impact Report

Prepared by

## Douglas A. Minor

## Easy Credit Relief, Inc.

## 2625 Townsgate Rd. Suite 330

## Westlake Village,  CA  91361

**01/24/2019**

**Introduction**

I have been retained as a credit expert by Bradford Bentley, who is being represented by the law office of John H. O'Rourke. In that capacity I have been asked to review documents provided to me and to offer my opinion(s) and damages calculations regarding information reported and appearing on Bradford Bentley's credit files as maintained by three nationally-recognized credit reporting agencies: Equifax, TransUnion and Experian. I have further been asked to assess specific reporting related to a Wells Fargo Bank home equity line of credit (HELOC) account.

I am the president of Easy Credit Relief, Inc., and my opinions expressed in this report are based on my professional knowledge and thirty-plus years of experience in the real estate investment, mortgage lending, and credit industries.

**Qualifications**

Over more than three decades, I have reviewed thousands of credit reports and answered thousands of questions regarding credit scores and the information contained in credit reports. I have made educational presentations to audiences of all types, from consumers to industry professionals. I developed a Credit Scoring Mortgage Analysis Model. I participate regularly in ongoing educational programs, keeping current on credit scoring model changes, credit laws, and credit damage issues that affect consumers.  I have also worked with a national real estate training company to develop educational content on credit-related issues.

I am co-author of the book *Anatomy of Credit Scores*. In my capacity as an expert, I have appeared on CBS *Channel 2 News*, and been a guest on several radio programs, including *The Real Estate Life* radio program on KFWB News Talk 980, and *The David Cruz Show* on KTLK 1150 FM in Los Angeles. I have been quoted in articles that appeared on numerous websites, including CreditCards.com, FoxBusiness.com and Yahoo! Finance. I authored an article in June 2013 for *Valley Lawyer* magazine

46

titled "Quantifying Damages from Credit Harm." Additionally, I have participated in expert panels covering consumer credit-related issues and have been a featured speaker at consumer outreach assistance programs.

During my time as a professional in the mortgage lending industry I originated and processed residential mortgages, preparing them for underwriting by reviewing and analyzing credit reports and the creditworthiness of each applicant. I have prepared and funded private second trust deeds personally and for investors, which included underwriting and analyzing the credit reports, tax returns, financial statements and creditworthiness of each application (in some cases, using self-directed IRA funds). Additionally, I set up the servicing on private notes, in some cases working with an accommodator of a qualified plan. I negotiated and priced interest rates in prime, subprime and private money markets.

I have managed the processing of financial and credit documentation for commercial and construction loans. I have also served as a consultant on the planning and transitioning of a mortgage brokerage firm to a mortgage banking operation.

As a residential real estate appraiser I was responsible for measuring properties, assisting in the evaluation of comparable sales, and preparing appraisal reports.

As a notary public I performed loan document signings for escrow transactions, name affidavits, quitclaim deeds, satisfactions of judgment and power of attorney.

As a real estate investor I have invested in residential real property and LLP's buying commercial office buildings, publicly traded REIT's, and private money mortgage financing which was secured by promissory notes and deeds of trust on real property. In some cases I also handled the servicing of these loans.

47

**Educational Certifications and Licensing**

On November 3, 2009, I was recognized by the Consumer Data Industry Association of Washington D.C. for successfully meeting the conditions of eligibility and passing the required examination to receive a Fair Credit Reporting Act Certification. My certification remained active through November 2, 2011.

I was presented with a Certification of Expert status in the fields of credit scoring and credit restoration by Edward Jamison, Esq. of CreditCRM in Los Angeles, California on March 28, 2008.

In December 2013, I completed the *Certified FICO ® Professional* program at ALLREGS Academy, earning the designation Certified FICO® Professional (*FICO Pro*).



I also earned a Certificate of Achievement and Training in the FACTA Identity Theft Prevention Program.

In October 2006, after studying at the Certified Mortgage Planning Specialist (CMPS) Institute, I met the required standards and successfully completed the training and examination process, and was acknowledged as an expert in the area of mortgage planning, cash flow management, and real estate equity management.

In 2008, I completed and passed the requirements to earn the Certified Divorce Planning Professional designation, which focuses on creating equitable solutions for divorcing individuals and protecting their C.R.A.D.L.E. (credit, resolve, assets, dependents, life and estate).

4

I held a real estate salesperson's license from the California Department of Real Estate from October 1985 to November 2011.

In February 2014, I was recognized by the Institute of Consumer Financial Education as an ICFE Certified Credit Report Reviewer (CCRR ®).



In September 2015 I received a certificate of completion for fourteen hours of Advanced Credit Education at the Credit Expert Summit-Cohort 2.

**List of Cases Where Testimony Occurred via Deposition and/or Trial**

Henrietta J. Monday v. Saxon Mortgage Services Inc., a Texas Corporation; Ocwen Loan Servicing, LLC,  United States District Court Eastern District California Sacramento Division,  Civil Action:  2:10-CV-00989-WBS-KJM—deposition, expert for the Defendant.

Wells Fargo Bank v. Deborah I. White, deposition with trial appearance in Los Angeles Superior Court, Case No.  BC455356—expert for the Plaintiff.

Robert J Fernandez v. Nancy Valerie Nester—trial appearance at Superior Court of the State of California in and for the County of Ventura, Case No. 56-2011-00393715-CU-BC-SIM.

Gregory Kijong Hong v. Nancy Youg Hong—trial appearance at Superior Court of the State of California for the County of Los Angeles, Case No. BD 471118.

Michael & Maria Taheny v. Wells Fargo, N.A.—trial appearance at United States District Court Eastern District of California Sacramento Division, Case No. 2:10-cv-02123-LKK-EFB, El Dorado County Superior Court.

Abe Poduska v. Valleywide Construction, Inc., a California corporation; Porter's Plumbing, Inc., a California corporation doing business as Quality

49

Plumbing; Case No. 11 CE CG 02699 in the Superior Court Of California County Of Fresno—Unlimited Civil—deposition and trial appearance.

Deutsche Bank National Trust Company, as Trustee for the registered holders of Morgan Stanley ABS Capital 1 Inc., Trust 2007-NC3 Mortgage Pass-Through Certificates, v. Richard P. Garcia and Gloria Ann Garcia – New Mexico District Court, Case No. D-202-CV-201005921—deposition.

Juliana Jett Plaintiff v. Experian Information Solutions, Inc., Trans Union, LLC, and American Home Mortgage Service, Inc., In the United States District Court for the Northern District of Texas Dallas Division,  Civil Action No. 3:12-cv-02136-D—deposition.

Kamelbir Pooni v. Wells Fargo Home Mortgage, Superior Court for the State of California in and for the County of Sacramento Unlimited Civil Division, Case No. 34-2010-00087434—deposition.

Jianjun Fu, et al, v. Wells Fargo Bank, N.A.,  United States District Court For The Northern District Of Alabama Southern Division, Civil Action No.: 2-13-cv-1271-AKK—deposition.

Kenneth S. Dewar v.  Erica Dewar, Trial appearance at Superior Court of California, County of San Diego, Case No.: ED 83669 April 25, 2014 and July 8, 2014—deposition on April 21, 2014.

Rindfleisch v. California Coast Credit Union, United States District Court Southern District of California, Case No. 13CV1882 DMS NLS—deposition on October 2, 2014.

Ronald Kirsh v. Andrew Todd Kirsh Superior Court of California County of Los Angeles-Central District, Case No. BC530501—deposition on January 27, 2015.

Wells Fargo v. Laura Filion, Case No. 56-2013-00434511-CU-CL-VTA—deposition on November 20, 2015.

Green Tree Servicing, LLC v. Karena Nichols, Case No. CJ-10-4206; Kay County, State of Oklahoma—deposition on March 09, 2015, expert for the Defendant.

Megan E. Zavieh v. JP Morgan Chase Bank, N.A., California Reconveyance Company, RWW Properties, Case No. HG126155549—deposition on March 24, 2015.

Nahid Noori v. Bank of America, Case No. 2; 15-cv-01467 AB United States District Court Central District of California—Western Division, January 20, 2016.

Patrick Kealy v. Ford Motor Credit Company, LLC, Case No. BC497696—deposition on February 5, 2016; trial August 17, 2017.

Elizabeth Williams v. Wells Fargo Bank and Wells Fargo Home Mortgage, Case No. C 13-03387 EDJ United States District Court Central District of California, March 29, 2016.

Shane R. Pierce v. Irma M. Rodriguez, No. 251,406 Division "C" 9th Judicial District Court Parish of Rapides State of Louisiana. In California, April 20, 2017.

Bonnie Miller and Brett Flaharty v. Ditech Financial LLC & Bank of America, N.A., et al, Case No. PC055489—deposition in Los Angeles on May 15, 2017.

Wells Fargo Bank, N.A. v. Laura Filion, Case No. 56-2015-00476012-CU-BT-VTA—deposition on July 18, 2017; trial on August 3, 2017.

Julia Dee Overbeck v. U.S. Bank Trust N.A., et al. United States Bankruptcy Court Western District of Washington—deposition on February 9, 2018.

Phillippe R. Corjon and Joyce E. Corjon v. Ocwen Loan Servicing, LLC, Case No.: KC067647 Superior Court for the State of California for the

County of Los Angeles – Pomona Courthouse South—deposition on May 10, 2018.

Robin L. Bailey and Marc H. Bailey – In the Superior Court of the State of Arizona in and for the County of Yavapai, Case No. V1300DO201480200 Telephonic Appearance May 15, 2018.

**Documents**

Prior to and during the preparation of this report, I have received, reviewed and/or looked at the following, not necessarily in the order presented:

1. Amended Complaint
2. Wells Fargo Negligence Time Line and Wells Fargo Damages
3. 1/26/2017 - American Reporting Company (ARC) credit report ordered by Mortgage Specialists
4. 2/10/2017 - Statement of Credit Denial
5. Credit Karma reports
6. 4/26/2016 Trans Union (TU)credit report, 5/4/16 TU Investigation Results
7. 4/28/16  Experian (XPN) credit report—even pages only (possibly Exhibit D)
8. "Credit Denial Info" includes Fannie Mae Form 1003
9. Bradford Bentley's 2016 tax returns
10.    12-23-2016 letter from Wells Fargo
11.    August  12, 2016 dispute letter to Wells Fargo from Bentley to correct past due reporting
12.    Chicago Title Insurance Company – Full Reconveyance dated 1/19/2016
13.    Emails

## Credit Scores

A credit score is derived from numerous measurements taken from a person's credit file at a specific time. It is well-known that late payment information can have a negative impact on a person's credit scores. Bankruptcies, judgments, liens, charge-offs, collections, foreclosures and the like are all considered negative, and have varying impact.

Additionally, many things can change on a credit report by the day, week, or month. For example, over a month new accounts may appear, old outdated items could be deleted, account balances and payment status are updated, inquiries might be made, etc. Moreover, everything on the report ages by one month. So, when someone's credit scores change, it is because of many different factors (see attached FICO impact data).

When reviewing credit scores it is important to understand what types of scores are being used, as not all scoring models are the same, and they can thus be misinterpreted. FICO® has many different scoring models, and competitor Vantage Score Solutions, Inc. has multiple models as well.  These scoring models can have varying score ranges, and in the case of a VantageScore® Report it will also indicate a letter grade.

A late payment reported to a consumer's credit files is considered negative and is commonly referred to as a derogatory item. This type of information will likely be reflected on a consumer's credit report for seven years. So the damage to a credit score, while frontloaded, is likely to endure to some extent for many years. If the derogatory information is removed or deleted from the credit profile, it would have no impact.

Additionally, when a consumer is applying for credit, a fair-to-good credit score may not be adequate for approval under some underwriting guidelines. On the other hand, a consumer with poor credit scores may be approved for credit, but at an increased cost.

## Calculation of Credit Scores

"FICO® Scores are calculated using many different pieces of credit data in your credit report. This data is grouped into five categories: payment history (35%), amounts owed (30%), length of credit history (15%), new credit (10%) and credit mix (10%)."[1]

WHAT INFLUENCES YOUR VantageScore® Credit Score? Information in your credit files at the three national credit reporting companies is used to calculate your VantageScore credit score. This information can be grouped into six categories, but not every category carries the same weight in your score. The categories are: payment history, age and type of credit, percentage of credit limit used, total balances/debt, recent credit behavior, and available credit. "[2]

---

[1] www.myfico.com/credit-education/whats-in-your-credit-score/
[2] https://www.vantagescore.com

54                                                                                     10



**FICO® Score Distribution**

Legend
- October 2007
- October 2009
- October 2013
- April 2016

| FICO® Score B | PERCENT OF POPULATION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | October 2005 | October 2006 | October 2007 | October 2008 | October 2009 | October 2010 | October 2011 | October 2012 | October 2013 | October 2014 | October 2015 | April 2016 |
| 300–499 | 6.6 | 6.5 | 7.1 | 7.2 | 7.3 | 6.9 | 6.3 | 6.0 | 5.8 | 5.2 | 5.0 | 4.6 |
| 500–549 | 8.0 | 8.0 | 8.0 | 8.2 | 8.7 | 9.0 | 8.7 | 8.5 | 8.4 | 7.9 | 7.4 | 7.1 |
| 550–599 | 9.0 | 8.8 | 8.7 | 8.7 | 9.1 | 9.6 | 9.9 | 9.9 | 9.8 | 9.5 | 9.2 | 9.0 |
| 600–649 | 10.2 | 10.2 | 9.7 | 9.6 | 9.5 | 9.5 | 9.8 | 10.1 | 10.2 | 10.3 | 10.3 | 10.3 |
| 650–699 | 12.8 | 12.5 | 12.1 | 12.0 | 11.9 | 11.9 | 12.1 | 12.2 | 12.7 | 12.8 | 13.0 | 13.3 |
| 700–749 | 16.4 | 16.3 | 16.2 | 16.0 | 15.9 | 15.7 | 15.5 | 16.2 | 16.3 | 16.6 | 16.8 | 16.9 |
| 750–799 | 20.1 | 19.8 | 19.8 | 19.6 | 19.4 | 19.5 | 19.6 | 18.8 | 18.4 | 18.1 | 18.3 | 18.5 |
| 800–850 | 16.9 | 17.9 | 18.4 | 18.7 | 18.2 | 17.9 | 18.1 | 18.4 | 18.6 | 19.6 | 20.0 | 20.4 |
| TOTAL* | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |

* All columns may not add up to 100.0% due to rounding

© 2016 Fair Isaac Corporation.

**From myFICO™ Understanding FICO® SCORES**

## The higher your FICO® Scores, the better.

FICO® Scores generally range from 300 to 850, though industry-specific FICO® Scores have a slightly broader 250 – 900 score range. Higher FICO® Scores demonstrate lower credit risk, and lower FICO® Scores demonstrate higher credit risk.

What's considered a "good" FICO® Score varies by lender. For example, one lender may offer its lowest interest rates to people with FICO® Scores above 730, while another lender only offers its lowest interest rates to people with FICO® Scores above 760.

| | |
|---|---|
| **Poor** | **< 580** |
| **Fair** | **580 - 669** |
| **Good** | **670 - 739** |
| **Very Good** | **740 - 799** |
| **Exceptional** | **800+** |

**Credit Score Simulations for Bradford Bentley:**

**Simulated score #1** was generated to represent Bentley's FICO® credit score range during or around August 2015 without any derogatory information being reported by Welles Fargo on the HELOC. The 685 to 735 score range represents a good to very good credit profile and scores.

**Simulated score #2** was generated to represent Bentley's FICO® credit score range during or around December 2015 and January 2016 with the derogatory information being reported by Wells Fargo on the HELOC. The 555 to 605 score range represents a poor credit profile and scores.

**Simulated score #3** was generated to represent Bentley's FICO® credit score range during or around December 2015 without any derogatory information being reported by Wells Fargo on the HELOC. The 700 to 750 score range represents a good to very good credit profile and scores

**Credit Damage**

The financial damage that third parties can cause to one's credit should not be overlooked. The U.S. Small Business Administration website www.sba.gov describes it this way:

> As consumers, we have our own personal credit ratings to be concerned about. A downgrade of our personal credit scores can impact our lives tremendously.

In his prepared remarks at the Consumer Advisory Board Meeting on February 27, 2014, Consumer Financial Protection Bureau (CFPB) Director Richard Cordray stated:

> Credit reports and scores can determine the terms of people's mortgages, whether they qualify for auto loans, or if they are eligible for different credit cards. A potential employer may look at a consumer's credit report as a factor in making a hiring decision; or a landlord may review it before deciding whether to approve a potential renter. In short, credit reports, and the scores derived from them, play a fundamental role in determining whether and how each of us will be able to take advantage of opportunities to shape our futures … This financial scorekeeping exerts a tremendous and growing influence over consumers' lives.

TransUnion addresses this topic on its website, transunion.com, under the heading "Credit Issues and Bad Credit":

> Every creditor has its own definition of what is considered "good" vs. "bad" credit.  With more lenders today keeping credit standards tight, you need to do everything possible to get your credit in great shape.

In my experience working in the mortgage lending, real estate investment, and credit fields, I have witnessed firsthand the important role a person's credit profile and scores play in obtaining credit. Additionally, once negative information is reported, correcting or resolving its impact can be stressful, humiliating, and time-consuming. This can hinder and diminish one's enjoyment and quality of life during and following the resolution of the negative credit event or events.

13

## Quantifying and Evaluating Credit Damages

In this case, Bradford Bentley (Bentley) is claiming that his credit was damaged by Wells Fargo because they reported his HELOC account with them inaccurately as being past due "to various credit reporting agencies" (see COMPLAINT 2.4).

I have been given documents to review and have been asked to offer my opinions and assessment of any possible damage to Bentley. The opinions and damage assessment are contingent upon Bentley having made his payments on time during the period in which the derogatory reporting was made by Wells Fargo to the three major credit bureaus. I anticipate that this report may need to be supplemented and/or changed if additional information is supplied, such as additional credit reports and any other information that may be requested in the future.

There are various methods and approaches used in calculating and quantifying credit damages. Additionally, the methods used by different experts can vary. Credit damage may come in many forms, including:

— Out-of-pocket expenses, including time lost, valued at a reasonable rate
— Increased credit costs in the form of higher interest rates on credit cards, insurance premiums, and mortgages
— Loss or reduction of credit expectancy, credit reputation, and credit capacity

Another area in which damage can occur is lost opportunity, as in the loss of a job offer; or, inability to purchase a home, refinance an existing mortgage, or obtain a home equity line of credit (HELOC).

Damage can also extend to the loss of one's reputation and enjoyment of life, as referenced in "Credit Damage; Causes, Consequences and Valuation," by Stan V. Smiths, PhD, David A. Smith, and Stephanie R. Uhl.

14

## Impact to FICO® Score

|  | Consumer A | Consumer B | Consumer C |
|---|---|---|---|
| Starting FICO® Score | ~680 | ~720 | ~780 |
| FICO® Score after these events: | | | |
| 30 days late on mortgage | 600–620 | 630–650 | 670–690 |
| 90 days late on mortgage | 600–620 | 610–630 | 650–670 |
| Short sale / deed-in-lieu / settlement (no deficiency balance) | 610–630 | 605–625 | 655–675 |
| Short sale (with deficiency balance) | 575–595 | 570–590 | 620–640 |
| Foreclosure | 575–595 | 570–590 | 620–640 |
| Bankruptcy | 530–550 | 525–545 | 540–560 |

Source: FICO® Banking Analytics Blog. © 2011 Fair Isaac Corporation.

## Estimated Time for FICO® Score to Fully Recover

|  | Consumer A | Consumer B | Consumer C |
|---|---|---|---|
| Starting FICO® Score | ~680 | ~720 | ~780 |
| Time for FICO® Score to recover after these events: | | | |
| 30 days late on mortgage | ~9 months | ~2.5 years | ~3 years |
| 90 days late on mortgage | ~9 months | ~3 years | ~7 years |
| Short sale / deed-in-lieu / settlement (no deficiency balance) | ~3 years | ~7 years | ~7 years |
| Short sale (with deficiency balance) | ~3 years | ~7 years | ~7 years |
| Foreclosure | ~3 years | ~7 years | ~7 years |
| Bankruptcy | ~5 years | ~7–10 years | ~7–10 years |

Note: Estimates assume all else held constant over time (e.g., no new account openings, no new delinquency, similar outstanding debt).

Source: FICO® Banking Analytics Blog. © 2011 Fair Isaac Corporation.

15

Based on my review of the materials referenced above on page 9, as well as my experience and training in the mortgage lending, real estate investment, and credit industries, I have reached the following conclusions and opinions.

**Summary of Opinions**

The Defendant (Wells Fargo) in this case knew or should have known that reporting the HELOC account as past due would have a negative impact on Bentley's credit profile and scores. The Defendant's reporting of Bentley's payment history was not consistent with the monthly payments he had been making to them and at all times should have been reported as to the Credit Reporting Resource Guide® - Metro 2 format. A review of any of the Automated Consumer Dispute Verification (ACDV) forms generated during the dispute process would help to clarify what reporting was done and if it was appropriate and accurate (see e-OSCAR information below). Additionally, any Automated Universal Data forms generated by the Defendants would also be helpful in determining the accuracy of the reporting.

Due to the reporting (sometime around December 2015), Bentley was experiencing what other victims of derogatory and/or inaccurate credit reporting commonly encounter: denied credit due to derogatory reporting (see denial letter from Mortgage Specialists February 10, 2017, email from Anthony Ho at U.S. Bank and email from Travis Brown at Umpqua Bank), loss of credit expectancy, time and energy spent on correcting the problem, undue stress, and lost opportunities.

Assuming that any of the information being reported during or after September 2015 was inaccurate, the Defendants would be in violation of the Fair Credit Reporting Act (FCRA) and subject to damages.

Additionally, since a dispute narrative is showing on some of the credit reports reviewed, specifically, the ARC credit report ordered by Mortgage Specialists 1/26/2017, Credit Karma report dated 10/26/2016 containing information from TU & EFX, and 4/26/2016 TU Investigation Results, this could cause Bentley further problems if he were to apply for a mortgage (see Disputed Credit Report Tradelines below).

An open account showing past due payments with a balance owing and/or as a collection/charge off, as in this case, is only one of the factors underwriters consider when assessing a mortgage loan application. They will also consider the applicant's income, credit history, debt-to-income ratios and cash assets.

16

An underwriter must also make sure the loan meets all the guidelines associated with the specific loan program.

Having the Wells Fargo HELOC information appear on Bentley's credit profiles as a past due with a balance owing and/or as a collection/charge off (see Credit Reports in file prior to 2017) would have caused potential creditors to view him as a higher credit risk. They would have factored this into their underwriting and approval process before extending credit to him. Had Bentley applied for a mortgage, the probability is high, if not certain, that he would have been denied (see Fannie Mae information below and denial letter from Mortgage Specialists February 10, 2017, email from Anthony Ho at U.S. Bank and email from Travis Brown at Umpqua Bank). If he had been approved, he would have been subject to increased costs and higher interest rates due to the impact of the above reporting on his credit profiles and scores (see "Level 1: Adverse Market Delivery Charge" below) or a loan amount not sufficient to refinance or purchase the home/loan applied for.  This would also have had an impact on his credit scores and credit profile, which will continue to be impacted as along as this information continues to appear.

Had the Wells Fargo account not been reported with inaccurate and/or derogatory information, Bentley's credit scores and profile before December 2015 would have been considered good to very good, depending on if and/or when he applied for credit and what type of credit he applied for. Additionally, based on my experience of more than 30 years working with consumers on credit issues, Bentley's claim of emotional distress is consistent with what people experience who have derogatory information reported on their credit profiles.

**Conclusion**

Bradford Bentley has suffered credit damage due to the Defendant's reporting information to the three major credit bureaus. The HELOC account, while it was and/or is reported as delinquent between December 2015 and the present, was a significant factor in the denial of his application for a mortgage loan and other credit (see Mortgage Specialists decline letter associated with a home loan application). After the pay-off in December 2016, the Defendant's reporting of the account as settled for less than the full balance would be viewed as derogatory and would impact his credit profile and scores. The 60- and 90-days past due reporting, whose accuracy is in question, would also be harmful—considering that had no derogatory information been reported on Bentley's credit profile up to December 2016, or had he not paid off the

account for less than the full balance, his credit profile and scores would have been considered good to very good.  Since Bentley paid off the account for less than the full balance, the "paid for less than full balance" or "settled for less than the full balance" comments will be reflected on the account and looked at as derogatory, affecting his credit profile and scores. It is my understanding that he paid off the account for about 50 percent of the balance, based upon the 12-23-2016 letter from Wells Fargo in December 2016 and his 2016 tax return (1040) showing a cancelled debt amount of $52,331.

I have not received an expert report to review from an expert in my field and will review and respond to such a report if it is provided and I am asked to do so.

Credit damage and its consequences can potentially harm the lives of virtually all consumers, despite public awareness and available information that is meant to prevent or diminish its impact. Credit damage can cause its victims severe consequences emotionally as well as financially. As of this writing, the Defendant's account is showing as a derogatory account on Bentley's credit profile and he will not be able to obtain credit as he would have before.

The damages in this case are real and can be quantified based on empirical data. Below is a summary of out-of-pocket costs, potential costs, and lost opportunities incurred by Bentley:

Statutory damages allowable under the Fair Credit Reporting Act (FCRA)

Methodology: $100 to $1,000 per violation of reporting inaccurate information on a monthly basis by Defendants to TransUnion, Equifax and Experian from December 2015 to present, totaling 37 months multiplied by 3 for each bureau—for a total of one hundred eleven violations.

$11,000 to $110,000

Lost access to capital                                                    $250,000

Methodology: based on loan application to Umpqua Bank and emails from Travis Brown from Umpqua Band and Anthony Ho with U.S. Bank.

18

Time, energy dealing with problem                                    $27,634

Methodology: hours spent to correct and/or deal with the problem multiplied by hourly wage of the individual. Using January 2016 to January 2019 totaling 36 months x 2 hours per week given by Bentley and using his Gross Monthly Income (GMI) reported on the Uniform Residential Loan Application (1003) of $15,352 the calculation is $88.57 per hour multiplied by 312 hours.

Lost mortgage refinance opportunity on 808 3rd Ave. North Seattle WA with Mortgage Specialists
Methodology: new 30-year $563,500 amortized fixed rate loan for $563,500 at 4.625% with payment of $2,897.18 minus monthly principal and interest payments of $3,975.52 on existing first and second mortgages for 360 months. $3,975.52 - $2,897.18 = $1,078.34 x 360 months =                    $388,202.40

Total Damages Range – (rounded to the nearest dollar)    $676,836 to $775,836

**Compensation**

I am being paid $375 per hour for consulting, case review, investigation, research, and report preparation. I am being paid $375 per hour for testimonial services including depositions, hearings and trial appearances, and when appropriate, $250 per hour for travel time plus expenses.

This report is intended to be a summary of the opinions and conclusions I have reached thus far. It is not intended to set out every possible fact or authority that may support my conclusions and opinions, nor is it intended to replace the information found in the references cited. I am not an attorney and no statement in this report is intended as a legal conclusion. I understand that discovery in this case may be ongoing and I reserve the right to modify, amend, or supplement this report upon any information, facts, documents or testimony that may be provided to me in the future. I affirm that the foregoing is true and accurate to the best of my knowledge and ability based on the documents I've reviewed, and that this report was signed in Westlake Village, California on January 24, 2019.

Respectfully submitted,

_____

**Douglas A. Minor**

## Table 1: Adverse Market Delivery Charge*

| 0.250% |
|--------|

* Applicable to all mortgages delivered to Fannie Mae, including FHA, VA, Rural Development 502 Mortgages, HUD 184 Native American Mortgages, matured balloon mortgages (refinanced or modified, per *Servicing Guide* requirements) redelivered as FRMs, and reverse mortgages.

## Table 2: All Eligible Mortgages (Excluding MCM); LLPA by Credit Score/LTV

| PRODUCT FEATURE | LLPAs by LTV Range | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Representative Credit Score | ≤ 60.00% | 60.01 – 70.00% | 70.01 – 75.00% | 75.01 – 80.00% | 80.01 – 85.00% | 85.01 – 90.00% | 90.01 – 95.00% | 95.01 – 97.00% | SFC |
| ≥ 740 | -0.250% | 0.000% | 0.000% | 0.250% | 0.250% | 0.250% | 0.250% | 0.250% | N/A |
| 720 – 739 | -0.250% | 0.000% | 0.250% | 0.500% | 0.500% | 0.500% | 0.500% | 0.500% | N/A |
| 700 – 719 | -0.250% | 0.500% | 0.750% | 1.000% | 1.000% | 1.000% | 1.000% | 1.000% | N/A |
| 680 – 699 | 0.000% | 0.500% | 1.250% | 1.750% | 1.500% | 1.250% | 1.000% | 1.000% | N/A |
| 660 – 679 | 0.000% | 1.000% | 2.000% | 2.500% | 2.750% | 2.250% | 2.250% | 1.750% | N/A |
| 640 – 659 | 0.500% | 1.250% | 2.500% | 3.000% | 3.250% | 2.750% | 2.750% | 2.250% | N/A |
| 620 – 639 | 0.500% | 1.500% | 3.000% | 3.000% | 3.250% | 3.250% | 3.250% | 3.000% | N/A |
| < 620 (1) | 0.500% | 1.500% | 3.000% | 3.000% | 3.250% | 3.250% | 3.250% | 3.250% | N/A |

Applicable for all mortgages with terms greater than 15 years

(1) A minimum required credit score of 620 applies to all mortgage loans delivered to Fannie Mae in accordance with the *Selling Guide*; exceptions to this requirement are limited to loans in which any borrower has nontraditional credit and those originated in accordance with Refi Plus™ or DU Refi Plus (see the Refi Plus Pricing Matrix).

© 2012 Fannie Mae. Trademarks of Fannie Mae.
The Matrix is incorporated by reference into the Fannie Mae Selling Guide and supersedes any inconsistent information in the Selling Guide or earlier dated version of the Matrix.

9.20.2012   2

65

21

From Fannie Mae Seller Guide

## Disputed Credit Report Tradelines

When DU issues a message stating that DU identified a disputed tradeline and that tradeline was not included in the credit risk assessment, the lender must confirm the accuracy of disputed tradelines reported on the borrower's credit report. If it is determined that the disputed tradeline information is accurate, lenders must ensure the disputed tradelines are considered in the credit risk assessment by either obtaining a new credit report with the tradeline no longer reported as disputed and resubmitting the loan casefile to DU, or manually underwriting the loan.  If DU does not issue the disputed tradeline message, the lender is not required to

- further investigate the disputed tradeline on the credit report,

- obtain an updated credit report (with the undisputed tradeline), or

- manually underwrite the loan.

However, the lender is required to ensure that the payment for the tradeline, if any, is included in the total expense ratio if the account does belong to the borrower.

## Payment History

The lender must review the borrower's credit report to determine the current status of each credit account, the timeliness of payments, and the frequency, recency, and severity of any delinquent payments.

Credit histories that include recent late payments represent a higher credit risk than those with late payments that occurred more than 24 months ago. When there are payments that were 30, 60, or 90 days (or longer) past due, the lender must determine whether the late payments represent isolated incidences or frequent occurrences. Delinquent payments must be evaluated in the context of the borrower's overall credit history, including the number and age of accounts, credit utilization, and recent attempts to obtain new credit. For example, a credit history that includes delinquent payments along with recent inquiries and a high balances-to-limits ratio indicates a high credit risk.

22

**e-OSCAR**

From e-oscar.org / equifax.com:

e-OSCAR is a web-based, Metro 2 compliant, automated system that enables Data Furnishers (DFs) and Credit Reporting Agencies (CRAs) to create and respond to consumer credit history disputes. e-OSCAR also provides for DFs to send "out-of-cycle" credit history updates to CRAs. The system primarily supports Automated Credit Dispute Verification (ACDV) and Automated Universal Data (AUD) form processing as well as a number of related processes that handle registration, subscriber code management and reporting. ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate Data Furnisher based on the CRA and subscriber code affiliations indicated by the DF. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history. If an account is modified or deleted, carbon copies are sent to each CRA with whom the DF has a reporting relationship. AUDs are initiated by the DF to process out-of-cycle credit history updates. The system is used to create the AUD and route it to the appropriate CRA(s) based on subscriber codes specified by the DF in the AUD record. The e-OSCAR AUD process is intended to provide the CRA with a correction to a consumer's file that must be handled outside of the regular activity reporting cycle process. E-OSCAR may not be used to add or create a record on a consumer's file or as substitute for "in-cycle" reporting to the CRAs.

23

# EXHIBIT   E

**Strayer, Deborah**

| | |
|---|---|
| **From:** | John ORourke <johnhorourke@comcast.net> |
| **Sent:** | Thursday, January 31, 2019 3:33 PM |
| **To:** | David spelllman |
| **Cc:** | Strayer, Deborah; Englund, Rudy; Jansen, Per; Brown, Jane E. |
| **Subject:** | RE: Bentley v. Wells Fargo: Rule 37 Conference regarding the tardy expert report and related items |

Hi Dave:

OK agreed.

John

> On January 31, 2019 at 11:48 AM David spelllman <DavidCSpellmanSeattle@outlook.com> wrote:
>
> John,
>
> We spoke minutes ago.  You will attempt to communicate with your client over the lunch hour about the trial continuance, etc.  You will respond by email.
> I will be away from my computer while I go work out.
>
> Thank you.
>
> David, 206 696 0718.

**From:** David spelllman
**Sent:** Wednesday, January 30, 2019 8:06 PM
**To:** 'johnhorourke@comcast.net' <johnhorourke@comcast.net>
**Cc:** Strayer, Deborah <StrayerD@LanePowell.com>; Englund, Rudy <EnglundR@LanePowell.com>; 'Jansen, Per' <JansenP@LanePowell.com>; 'brownje@lanepowell.com' <brownje@lanepowell.com>; 'DavidCSpellmanSeattle@outlook.com' <DavidCSpellmanSeattle@outlook.com>
**Subject:** Bentley v. Wells Fargo: Rule 37 Conference regarding the tardy expert report and related items

John,

This email confirms and supplements the Rule 37 meet-and-confer session and case-management session we held today in your conference room.  In November 2018, the stipulated motion for a trial continuance and for additional ADR provided the expert report was "due not later than November 21, 2018." Dkt. No. 16 at 1:21-22.  The attached email chain documents our communications from November 9 – December 13, 2018. After that date we heard nothing from you regarding these matters until the day before we received Bentley's belated expert report on Friday, January 25, 2019—more than two months late.  Today you also admitted the report has a damage range of $696,836 to $775,836, which is more than three times the amount Bentley previously asserted.

69

I suggested one way to mitigate partially the harm from the 2+ month delay would be for Bentley to stipulate to a 2+ month trial continuance. I explained Wells Fargo will be filing a motion tomorrow. The motion will seek alternative relief including dismissal, continue the trial date and case schedule, exclude the late disclosed expert and other relief, in view of the looming trial date and case schedule. During out conference, I confirmed the alternative relief may include attorney's fees, expert fees, and mediation fees. I requested Bentley let us know tomorrow if he would stipulate to a 2+ month trial continuance. The court could grant dismissal of the case in view of Bentley's failure to comply with the case schedule.

I also identified other flaws in the expert report, but Bentley might cure the flaws to avoid needless motion practice on those items. First, I asked Bentley to produce the records reviewed by the expert (which are summarized at page 9 of the report). You agreed to produce those records. Second, I observed the report's second item of damage ($350,000 for loss access to capital) had no description of the grounds for that opinion. You recalled that item was discussed in a telephone call, and you stated you would ask the expert to supplement that item. Third, I asked about the fourth item of damage ($388,202 for the lost mortgage opportunity for the property at 803 3rd AVE, N., Seattle), which is not the property subject of the HELCO. You explained Bentley had received a private business loan from Steel and the Steel loan was over secured. But that is not an adequate description of the grounds for the expert's conclusion and thus the report is flawed and must be supplemented. Wells Fargo is entitled to complete information about Bentley's financial status and the business loans he received under the document subpoena I sent months ago. Fourth, I observed the report did not state the compensation to be paid to the expert for the report and testimony. You responded the expert has been paid $4,000.

You stated that we would be receiving a pre-mediation demand for over $650,000.

I suggested Bentley drop some of the new damage items for the reasons stated above. I reiterated that due to the case schedule we file the motion tomorrow. Please inform us tomorrow if Bentley will stipulate to a 2+ month trial continuance and dropping the new damage claims. The material change in the amount in controversy invalidates the discovery to date. The scope of that discovery was framed under the proportionality rule. Under the rule, the scope of discovery must be proportional to "the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1). After abandoning the emotional distress and humiliation damages several months ago, the amount in controversy should be shrinking—not expanding. The two new damage items that are roughly 94% of the damage calculation.

In the event that Bentley does not decide to drop the two new conclusory damage items for loss of access to capital and lost mortgage opportunity, then Wells Fargo will likely authorize us to depose the expert and Bentley and the circumstances may require us to retain an expert witness for the new items.

Separately, I observed that my cousin Steve Tully with the law firm Garrett + Tully has an office in Westlake Village, California, where your expert Douglas Minor is located. I will check about video conference capabilities.

We have contacted JDR to obtain dates for a possible mediation session. You confirmed your general availability in February including during the second week of February.

This email will become part of the certification for compliance with Local Rule 37(a)(1)'s meet-and-confer requirement. You and I met face-to-face in a good faith effort on January 30, 2018 to resolve these matters. You and I also met face-to-face on January 25, 2018 in the lobby of your office building. I

70

asked for an explanation why Bentley was delivering the report late, and you were unable to provide an explanation.

.

If you have any questions about this email, I may be contacted by email or by phone at 206 696-0718.

David Spellman

71